IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WESLEY REDDING, | ) | CASE NO. 1:16-CV-1411 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| vs. | ) | |
| | ) | |
| FINN'S INCORPORATED, d/b/a FINN'S | ) | MEMORANDUM OPINION |
| TIRE & AUTOMOTIVE, et al., | ) | |
| | ) | |
| Defendants. | | |

This matter is before the Court upon the parties' Cross-Motions for Summary Judgment. Defendants, Finn's Incorporated, d/b/a Finn's Tire & Automotive ("Finn's") and Brian Ettinger ("Mr. Ettinger"), filed a Motion for Summary Judgment on April 27, 2017 (ECF #25). Plaintiff, Wesley Redding ("Mr. Redding"), timely filed a Brief in Opposition (ECF #29) and Finn's timely filed its Reply (ECF #30).

Mr. Redding filed his Motion for Summary Judgment on May 1, 2017 (ECF #27). Finn's timely filed a Memorandum in Opposition (ECF #28), and Mr. Redding timely filed a Reply Brief in Support (ECF #31). Therefore, this matter is fully briefed and ripe for review.

For the reasons set forth herein, Finn's Motion for Summary Judgment (ECF #25) is GRANTED.

I.      FACTUAL BACKGROUND[1]

---

[1]  The factual summary is based upon the parties' statements of fact. Those material facts which are controverted and supported by deposition testimony, affidavit or other evidence are stated in a light most favorable to Plaintiff, the non-moving party.

Finn's is a family-owned and operated company that provides certified automotive repairs, sells a full line of tires, specializes in tire installation, and provides general and preventative maintenance on all makes and models of cars and light trucks. (*See* ECF #25, p. 1). In May of 2014, Mr. Redding interviewed with Mr. Ettinger for a position at Finn's. On May 28, 2014, Mr. Redding signed a "Manager Employment Proposal," which set forth a yearly salary, work hours, medical insurance coverage, vacation time and other employment-related details. (*See* ECF #25-1).[2] Mr. Redding worked at Finn's until February 5, 2016, when he was terminated for not meeting his sales and service goals. (*See* ECF #25, p. 3).

Mr. Redding alleges in his Complaint that Mr. Ettinger misclassified him as an exempt employee under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. and Ohio Revised Code § 4111.01 *et seq.*, and thereby failed to pay him overtime compensation of approximately $33,716.31. (*See* ECF #1; ECF #27, p. 14).[3] Finn's argues that Mr. Redding is exempt from overtime compensation because he was properly classified as a managerial employee. This Court agrees with Finn's argument, and for the reasons more fully set forth herein, Finn's Motion for Summary Judgment (ECF #25) is GRANTED.

II.   LEGAL ANALYSIS

    A.   <u>Jurisdiction</u>

Sections 16 and 17 of the FLSA, 29 U.S.C. §§ 216 and 217, and 28 U.S.C. §§ 1337 and 1345 grant district courts jurisdiction to adjudicate violations of the FLSA and to restrain

---

[2] It is not disputed that Mr. Redding was an employee of Finn's under FLSA standards.

[3] Mr. Redding's breach of contract and promissory estoppel claims were dismissed by this court in a Memorandum Opinion and Order dated October 6, 2016 upon Finn's motion to dismiss. See ECF #15.

violations of Section 15 of the FLSA. 29 U.S.C. § 215; *Hugler v. Cathedral Buffet, Inc.*, No. 5:15CV1577, 2017 WL 1287422, at *6 (N.D. Ohio Mar. 29, 2017).

      B.      Standard of Review

The summary judgment standard is well-settled. Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900, 907 (6th Cir.2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. (*Id*. at 322). A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.,* 244 F.3d 797, 800 (6th Cir.2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248–49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has

the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251–52; *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. (*Id*.) Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. (*Id*.) A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *(Id*. at 248–52).

   C. <u>Mr. Redding's Employment Status under the FLSA</u>

Mr. Redding's Complaint alleges that Finn's failed to pay him overtime compensation due to him under the FLSA and O.R.C. § 4111.01 et seq. Since both statutes contain similar standards and language, Courts have uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA. *See, e.g., Mitchell v. Abercrombie & Fitch, Co.*, 428 F.Supp.2d 725, 732 (S.D.Ohio 2006), *aff'd*, 225 F.App'x 362 (6th Cir. 2007).

The FLSA requires "an employer to compensate an employee who works over forty hours a week at a rate not less than one and one-half times the regular rate at which he is employed." *Int'l Bhd. of Elec. Workers, Local Union No. 8 v. King Elec. Serv., Inc.*, No. 3:13CV864, 2014 WL 1821044 (N.D.Ohio May 8, 2014)(*citing Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997); *see also* 29 U.S.C. § 207(a)(1). However, Section 13(a) of the FLSA sets forth

exceptions from this overtime compensation requirement for any salaried employee working in a bona fide executive, administrative or professional capacity. 29 U.S.C. § 213(a)(1).  The Sixth Circuit has held that in determining whether an exemption applies to an employee, courts narrowly construe the exemption against employers, *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960), thereby placing on Finn's the burden of proving that an exemption applies to Mr. Redding. *Renfro v. Indiana Michigan Power Co.,* 370 F.3d 512, 515 (6th Cir. 2004)(*citation omitted*). Therefore, Finn's must establish each element of the exemption by a preponderance of the clear and affirmative evidence. *Id. See also Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 847 (6th Cir. 2012) (*citation omitted*).

Finn's argues that the "executive employee exception" applies herein, and therefore, Mr. Redding is not entitled to overtime pay under the FLSA.[4]

An employee qualifies for the executive exemption if:

(1) he is compensated on a salary basis at a rate of not less than $455 per week;

(2) his primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof;

(3) he customarily and regularly directs the work of two or more other employees,

(4) he has the authority to hire or fire other employees, or his suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.

*Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 502 (6th Cir. 2007); 29 C.F.R. § 541.119(a) (2003); 29 C.F.R. § 541.1(f).

---

[4] The other exemptions provided within the FLSA will not be discussed herein because Finn's primarily argues the executive exemption and "Redding agrees that none of the other exemptions could be applicable relating to Redding's employment at Finn's." (ECF #31, p. 2, fn 1).

-5-

The parties agree that Mr. Redding earned over $455.00 per week as a salaried employee at Finn's, therefore, the first element is not in dispute. As it relates to Mr. Redding's "primary duties," the regulations define this term as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). While Mr. Redding has provided a list of duties he did <u>not</u> perform, he has failed to provide information regarding his specific job duties while working at Finn's. (*See, e.g.*, ECF #25-6, Mr. Redding's responses to Finn's discovery requests). However, the Affidavit of Mr. Ettinger provides that Mr. Redding had many duties at Finn's, which included the following:

> - he opened and closed the shop using a key and alarm code not available to other employees;
>
> - he oversaw and directed the work of three technicians, (which includes collaborating with Mr. Ettinger on employee work schedules), spent several weeks training one employee,[5] reported any personnel related issues about technicians and recommended productivity bonuses based upon completion of specific work goals;
>
> - he confirmed the work ordered by these employees through quality control procedures, scheduled repairs to be completed on cars, inspected technicians work and assisted technicians when needed; and ordered and managed inventory, making sure parts were in-house when needed for repairs; and
>
> - he assessed customer's needs and amount of work needed, and then determined which employee had the skill-set and availability to complete the required work;
>
> - he communicated with customers to obtain approval for necessary work, managed and resolved customer questions and concerns, and collected payment from customers.

(*See* ECF #25-2).

---

[5] See ECF #25-5, Affidavit of Gregory Glenn stating "I received my training at Finn's primarily from [Mr. Redding]."

Mr. Redding downplays the importance of these duties, arguing he "had no more discretion than the hourly secretary or the automotive technicians at Finn's." (ECF #31, p. 5). For instance, Mr. Redding argues that because Mr. Ettinger was the owner of Finn's, and had the final say in most matters relating to the business, this rendered Mr. Redding's role non-managerial. (*See, e.g.*, ECF #29, p. 4). This argument is not persuasive. Even when an employee's discretion is limited in some manner, if the employee "exercise[s] discretion over important managerial functions on a sufficiently frequent basis," then such employee's primary duty is considered managerial. *See, e.g., Thomas*, 506 F.3d at 507.

Mr. Redding also argues that the percentage of time he might have spent working on vehicles exceeds the time used to complete managerial tasks. (*See* ECF #29, p. 8). While this time factor can be important in some cases, it has been found that when an employee manages a business while at the same time performing non-exempt tasks, a Court should not give undue weight to the time factor of the "primary duty" inquiry. *See Thomas*, 506 F.3d at 504 (*citing* 29 C.F.R § 541.103). In fact, an employee whose work requires managerial and non-managerial duties simultaneously, "will be considered to have management as [his] primary duty," even if he spends more than 50 percent of his time completing non-managerial tasks. (*Id)*.

For these reasons, this Court finds that Mr. Redding's primary duties were managerial, and therefore, he qualifies as an exempt executive employee under the"primary duty" element of the FLSA.

The next element requires examining whether Mr. Redding directed the work of two or more other employees on a regular basis. Whether an employee "customarily and regularly" directs the work of two or more employees means "a frequency that must be greater than

occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' include work normally and recurrently performed in every workweek; it does not include isolated or one-time tasks." *Mitchell*, 428 F. Supp. 2d at 744; 29 C.F.R. § 541.701.

It has already been established that Mr. Redding was responsible for managing three technicians while working at Finn's. These three employees have indicated through Affidavits that they reported directly to Mr. Redding on the cars for which he had ultimate responsibility, so that he could communicate any work or repairs directly to the customer. (*See* ECF #25-3, 4 and 5). Mr. Redding assigned these three technicians specific tasks after determining the immediate workload within Finn's and evaluating each technician's strengths and abilities. (*See* ECF #25-1). These are merely a few examples of Mr. Redding's direction over the other employees at Finn's.

The last element Finn's must prove herein is to show that Mr. Redding's suggestions and recommendations regarding other employees are "given particular weight." *Burson v. Viking Forge Corp.*, 661 F. Supp. 2d 794, 804 (N.D. Ohio 2009)(*citing* 29 C.F.R. § 541.100(a)). Under the regulations, "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." (*Id.*)(*citations omitted*).

To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to:

> whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the

-8-

>executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. [...]

*Id.* at 804.

While Mr. Redding did not have unfettered authority to hire or fire employees, the record shows that on a daily basis, Mr. Redding worked with three technicans at Finn's. Mr. Ettinger stated that Mr. Redding "made recommendations pertaining to other employees' productivity bonuses," reported personnel-related issues and "made recommendations concerning resolution of these issues," and reported to Mr. Ettinger regarding the technicians "progress, quality of work and areas for improvement." (See ECF #25-1). While Mr. Redding's opinion is that his input was not always utilized, such opinion does not raise a genuine issue of material fact. Therefore, this Court finds that Finn's has proven the last element necessary to determine that Mr. Redding is an exempt executive employee from overtime compensation under the FLSA.

As a side issue, the parties indicate that Mr. Redding never asked Finn's for overtime payments or otherwise discussed his overtime hours with Mr. Ettinger. (*See* ECF #27, p. 3; ECF #28, p. 2). Despite Mr. Redding's insinuations to the contrary, Finn's concedes that regardless of whether Mr. Redding asked for overtime compensation, Finn's was responsible for adhering to the requirements of the FLSA. (See, e.g., ECF #27, p.3). It seems that this issue was raised by Finn's because within weeks of beginning his employment, Mr. Redding filed a separate lawsuit in this Court against a previous employer for its alleged "failure to pay overtime compensation."[6] Therefore, Finn's posits that while working at Finn's, "[Mr. Redding] knew that the tasks he

---

[6] See Case No. 14CV1251, filed June, 10, 2014 in the United States District Court, Northern District of Ohio. The parties settled the claims in this lawsuit on April 29, 2016, six weeks before the filing of the within action.

-9-

performed qualified him for an exempt status, especially given his knowledge of overtime requirements gained from his prior lawsuit." (See ECF #28, p. 2).

In summary, Mr. Redding was compensated on a salary basis at a rate of not less than $455 per week, his primary duty at Finn's was to manage, he directed the work of two or more other employees, and his recommendations regarding the employment status of these employees was given particular weight. Therefore, Mr. Redding qualifies for the executive exemption under 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.1. As such, Finn's and Mr. Ettinger are entitled to summary judgment as to Mr. Redding's claims and are not liable to Mr. Redding for overtime compensation.

III.  CONCLUSION

For the reasons set forth herein, Finn's and Mr. Ettinger's Motion for Summary Judgment (ECF #25) is GRANTED.  Mr. Redding's Motion for Summary Judgment (ECF #27) is hereby rendered MOOT.  This case is, hereby, dismissed with prejudice in favor of Defendants.


IT IS SO ORDERED.


                                                /s/ Donald C. Nugent
                                                DONALD C. NUGENT
                                                United States District Judge


DATED:   July 27, 2017